Filed 4/9/26  P. v. Arias CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>ALVARO ARIAS,<br><br>        Defendant and Appellant. | B339046<br><br>(Los Angeles County<br>Super. Ct. No. NA120755) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel J. Lowenthal, Judge.  Affirmed.

Debbie Yen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Christopher G. Sanchez and Seth P. McCutcheon, Deputy Attorneys General for Plaintiff and Respondent.

# INTRODUCTION

Alvaro Arias appeals from the judgment after a jury convicted him of, among other crimes, robbery, willfully inflicting corporal injury resulting in a traumatic condition on someone with whom he had a dating relationship, and driving or taking a vehicle without consent of the owner and with intent to deprive the owner of title or possession. Arias argues that substantial evidence did not support his conviction for unlawfully driving or taking a vehicle, that his trial counsel was ineffective by failing to request certain jury instructions, and that the trial court abused its discretion in failing to strike his prior serious or violent felony conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

### A. *Arias Assaults His Girlfriend, Takes Her Phone, and Drives Away with Her Car*

On October 9, 2022 Arias and his girlfriend Bertha Caceres got into an argument at Caceres's workplace. Caceres told Arias that she did not want to date him anymore and that they should go their separate ways because he had been hitting her. Caceres also confronted Arias about messages she had seen earlier that day on Arias's phone that caused her to suspect Arias was cheating on her. Arias responded by hitting her on the left side of the face. Caceres hit him in the forehead with a pair of scissors, and Arias ran away.

The next day, while Caceres and Arias were in Caceres's car, they continued the argument from the previous day.

Caceres, who was driving, told Arias that she wanted to end the relationship.  Arias reached over and turned the car's engine off while the car was in the middle of the street.  When Caceres tried to restart her car, Arias told her to pull into a driveway so they could talk.  After Arias agreed he would leave her alone if she parked the car, Caceres pulled into a parking lot.

Caceres told Arias that she did not want to be around him and that she was going to "leave the city."  Arias reacted by "tackling" her, grabbing her around the neck, and choking her until she was unable to breathe.  Caceres felt as if her "breath was going out."  Caceres tried to get away, but Arias grabbed her by her hair and pulled "a lot" of it out.  Arias hit Caceres three times in the "chest area."  Caceres realized her phone had fallen onto the floor of the car and began to look for it.  She saw a gun under Arias's leg.  At some point while Caceres was still in the car, Arias moved the gun to his lap.

Caceres opened the door of her car to get out and saw her phone on the seat.  Arias said, "Your phone's right there," and Caceres grabbed it.  Caceres walked across the parking lot, and Arias moved into the driver's seat of Caceres's car and followed her.  Arias got out of the car, walked to where Caceres was standing, and told her, "Get in the fucking car."  Caceres told Arias that she was not getting in the car and that she did not feel safe with him.  Arias grabbed Caceres around her neck, tried to pull her into the car, and eventually threw her to the ground.  Arias told Caceres, "Give me your fucking phone."  Arias "snatched" Caceres's phone out of her hand and said:  "Fuck you, bitch.  Watch, bitch, watch, I'm going to get your mom and your kid."  Arias ran to Caceres's car and drove away.

Caceres asked a stranger to call the police. Officer Jesse McHenry and his partner responded to the call and interviewed Caceres in the parking lot. Caceres described the assault and told the officers that she wanted to "press charges" against Arias for stealing her car, that she was afraid Arias would use his gun on her, and that Arias had a tattoo of a professional football team logo on the left side of his head. Caceres said that Arias "took everything," including her phone, identification, and house keys (which she had left in the car) and that her mother and daughter were in the car.[1]

Three days later, police officers conducted a traffic stop while Caceres was driving her car, and Arias was sitting in the front passenger seat. Referring to the October 10, 2022 incident, the officer asked Caceres whether Arias, after hitting Caceres, took her car "without permission." Caceres said, "Yeah." Another officer recovered a firearm from the car, and Caceres said it belonged to Arias. During the traffic stop one of the officers saw Arias had a tattoo of the same football team logo on his head and asked Arias to state his name. Arias said that his name was David Arias, that his brother was Alvaro Arias, and that he and his brother had the same tattoos.

---

[1] Counsel for defendant acknowledged in his closing argument that, after the altercation, Arias "drove to the house with the mother and the daughter." There is some evidence, however, Caceres's mother and daughter were at home at the time of the assault. Arias does not challenge Caceres's statement her mother and daughter were in the car when he drove away from the parking lot.

B.    *At Trial Caceres Recants Her Statements to the Police;*
      *The People Impeach Caceres and Present Evidence of*
      *Arias's Guilt*

At trial Caceres testified she and Arias got into an argument on October 10, 2022 because she saw pictures of another woman on Arias's phone and confronted him about them. Caceres denied that anything happened while she and Arias were in the car and explained they had "just [an] argument" before she got out of the car and walked away. When asked about her prior statements to the police describing the assault, Caceres explained she made up the statements "out of anger." Caceres testified she did not remember telling the police that she saw Arias had a gun or that, when she got out of the car, Arias had moved the gun to his lap. Caceres denied that Arias told her to get back in the car and said that Arias got out of the car, walked toward her, and then "left." Caceres stated that she wanted to walk home because she "didn't want to keep on going with the argument" and that Arias just drove away. Caceres admitted that she was crying in the parking lot and that she asked a stranger to call the police. Caceres said she did not recall telling the police that Arias hit her in the face, grabbed her, tried to strangle her, pulled out some of her hair, or took her phone from her hand.

The prosecutor played for the jury a surveillance video of the parking lot that captured the interaction between Arias and Caceres outside the car. Referring to a segment of the video, the prosecutor asked Caceres, "Do you not want to tell us that he punched you in the face twice . . . is that correct?" Caceres replied, "Well, you're looking at it." When the prosecutor asked whether Caceres told the officers that Arias had choked her, Caceres said, "Yeah, it's on the video." Referring to another

5

segment, the prosecutor asked Caceres, "So he takes you to the ground, is that correct?" Caceres replied, "Yeah." Caceres refused to confirm the video showed Arias holding her head down on the ground, but she admitted the video showed her lying on the ground of the parking lot when Arias got into her car and drove off.

Caceres testified she told the officers that she wanted to end the relationship with Arias because he was cheating on her. Caceres stated that the phone Arias took from her hand was really his phone and that she told the police it was her phone because she was angry with him. Caceres stated that Arias brought her car back to her house the next day, that she and Arias "shared" the car, that he had "his own spare key," that he helped her with insurance payments, and that she was never concerned Arias would not bring the car back. Caceres said that she still loved Arias and that she did not want to see anything bad happen to him.

Officer McHenry testified that, when he interviewed Caceres in the parking lot on October 10, 2022, she "was highly emotional, scared of what had just happened, and just shaken up altogether." The officer stated he observed "swelling and bruising to the left side of her face." Officer McHenry recalled Caceres told him that Arias did not have her permission to take her car that day. The officer testified that Caceres "consistently" referred to the phone Arias had taken from her as "her phone" and that, when Caceres needed to call her mother, she had to use another officer's phone. Officer McHenry stated that he saw "quite a few" strands of hair on Caceres's jacket and that Caceres told him that Arias pulled her hair in the car.

6

C.    *The Jury Convicts Arias, and the Trial Court*
      *Sentences Him*

The jury found Arias guilty of robbery (Pen. Code, § 211),[2] willfully inflicting corporal injury resulting in a traumatic condition on someone with whom he had a dating relationship (§ 273.5, subd. (a)), driving or taking a vehicle without consent of the owner and with intent to deprive the owner of title or possession (Veh. Code, § 10851, subd. (a)), possessing a firearm as a felon (§ 29800, subd. (a)(1)), carrying a loaded firearm on his person or in a vehicle (§ 25850, subd. (a)), unlawfully possessing ammunition (§ 30305, subd. (a)(1)), and falsely representing or identifying himself as another person to a peace officer (§ 148.9, subd. (a)).  The trial court found true the allegation Arias had a prior serious or violent felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).  Arias admitted, and the court found true, aggravating circumstances under California Rules of Court, rule 4.421(b)(3) and (b)(4).  The court imposed an aggregate prison term of 10 years eight months.  Arias timely appealed.

## DISCUSSION

A.    *Substantial Evidence Supported Arias's Conviction*
      *Under Vehicle Code Section 10851, Subdivision (a)*

Arias argues substantial evidence did not support his conviction for unlawfully driving or taking a vehicle because Caceres had given him "blanket consent" to drive her car and

---

[2]    Undesignated statutory references are to the Penal Code.

7

there was no evidence Caceres had "revoked" her consent on October 10, 2022, when Arias drove the car away.[3]  There is no merit to this argument.

          1.     *Applicable Law and Standard of Review*

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]  We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]  This determination 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Cardenas* (2025) 18 Cal.5th 797, 821; see *People v. Navarro* (2021) 12 Cal.5th 285, 302.)  "'Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for '"'substantial evidence.'"'" (*Navarro*, at p. 302.)  "We do not question the credibility of a witness's testimony, so long as it is 'not inherently improbable,' nor do we reconsider the weight to be given any particular item of

---

[3]    Arias also contends the evidence showed "he did not have the intent to permanently or temporarily deprive Caceres of ownership or possession of her car," but he does not provide any argument or authority on this point.  Therefore, he has forfeited the argument.  (See *People v. Ramirez* (2022) 13 Cal.5th 997, 1124, fn. 39; *People v. Stanley* (1995) 10 Cal.4th 764, 793; *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 467.)

evidence." (*Ibid.*) "We must also "'accept logical inferences that the jury might have drawn from the circumstantial evidence.'" (*People v. Flores* (2020) 9 Cal.5th 371, 411.)

> 2.    *Substantial Evidence Supported the Conviction*

Vehicle Code section 10851, subdivision (a), provides: "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle . . . is guilty of a public offense . . . ." (See *People v. Lara* (2019) 6 Cal.5th 1128, 1135; *People v. Garza* (2005) 35 Cal.4th 866, 871.) "To establish a defendant's guilt of violating Vehicle Code section 10851, subdivision (a), the prosecution is required to prove that the defendant drove or took a vehicle belonging to another person, without the owner's consent, and that the defendant had the specific intent to permanently or temporarily deprive the owner of title or possession." (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574.) "[N]onconsent of the owner is a necessary element of the crime of the unlawful taking or driving of a vehicle." (*People v. Lam* (2004) 122 Cal.App.4th 1297, 1301.)

Substantial evidence supported the jury's finding Arias did not have Caceres's consent to take her car after he beat her up and threatened to harm her mother and daughter. Caceres told officers on two occasions (October 10, 2022 and October 13, 2022) Arias did not have permission to take her car. (See *People v. Ghobrial* (2018) 5 Cal.5th 250, 281 ["It is well settled that 'unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a

9

conviction.'"].) Aside from this direct evidence, the jury could reasonably infer Arias did not have Caceres's permission to drive her car away because Arias had a gun, he physically assaulted her before driving away in her car, and he left her in the middle of the parking lot. And Officer McHenry found Caceres frightened and distraught, with visible injuries on her face. (See *People v. Howard* (2010) 51 Cal.4th 15, 34 ["'"Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt."'"].)

Arias argues that he had "permission to drive [Caceres's] car at will" and that there was no evidence, other than her statements to the police officers, Caceres revoked that permission before Arias drove away in her car. But the direct evidence of Caceres's statements, along with circumstantial evidence, was substantial evidence Arias did not have Caceres's permission to drive away in her car. Arias is essentially arguing Caceres's general permission to use her car meant he had an unconditional right to take the car at any time and under any circumstances, unless Caceres expressly told him he could no longer drive her car. Arias does not cite any authority for this argument, thus forfeiting it. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363; *People v. Nash* (2020) 52 Cal.App.5th 1041, 1061.) Arias's argument also lacks merit. Vehicle Code section 10851, subdivision (c), states: "In any prosecution for a violation of subdivision (a) or (b), the consent of the owner of a vehicle to its taking or driving shall not in any case be presumed or implied because of the owner's consent on a previous occasion to the taking or driving of the vehicle by the same or a different person." Thus, even if Caceres at some point gave Arias permission to

10

drive her car, that permission did not allow him to drive her car after he beat her up.

Arias asserts there was no evidence he obtained Caceres's keys by force. Use of force, however, is not an element of a violation of Vehicle Code section 10851, subdivision (a). The crime of carjacking requires the defendant to take a motor vehicle by means of force or fear; the crime of unlawfully taking a vehicle does not. (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034; see *People v. Hudson* (2017) 11 Cal.App.5th 831, 838 ["'mere vehicle theft becomes carjacking if the perpetrator, having gained possession of the motor vehicle without use of force or fear, resorts to force or fear while driving off with the vehicle'"]; *People v. Dominguez* (1995) 38 Cal.App.4th 410, 418-419 ["The carjacking offense omits the 'driving' element of Vehicle Code section 10851 and adds to it the element of securing the vehicle from the immediate presence of the victim or the passenger by force or fear."].) In any event, there was evidence Arias used force: He was armed with a firearm, struck and choked Caceres, and threatened her and her family.

Citing Caceres's testimony she thought of him "as family and wanted to marry him," Arias attempts to characterize himself as a quasi-owner. That attempt fails. Caceres testified the car was a gift to her and was registered in her name. That Arias had a spare key or helped maintain the car did not make him a co-owner. Arias lost his temper and assaulted Caceres because she tried to break up with him in the car. The jury could reasonably infer any permission Caceres may have given Arias to drive her car ended when she told him she no longer wanted to be in a relationship with him and he beat her up in the parking lot and threatened her family.

11

B.    *Counsel for Arias Did Not Provide Ineffective
       Assistance*

Arias argues we should reverse his conviction for unlawfully driving or taking a vehicle because his trial counsel provided ineffective assistance by failing to request an instruction on the mistake of fact defense, as stated in CALCRIM No. 3406.[4]  Arias argues we should also reverse his robbery conviction because his counsel provided ineffective assistance by failing to request CALCRIM No. 3406 for that crime and an instruction on the defense of claim of right.  None of these arguments has merit.

1.    *Applicable Law and Standard of Review*

"'A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components.  First, the defendant must show that counsel's

---

[4]    CALCRIM No. 3406 states:  "The defendant is not guilty of *<insert crime[s]>* if (he/she) did not have the intent or mental state required to commit the crime because (he/she) . . . did not know a fact or . . . mistakenly believed a fact.  [¶]  If the defendant's conduct would have been lawful under the facts as (he/she) . . . believed them to be, (he/she) did not commit *<insert crime[s]>*.  [¶]  If you find that the defendant actually believed that *<insert alleged mistaken facts>* . . . , (he/she) did not have the specific intent or mental state required for *<insert crime[s]>*.  [¶] If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for *<insert crime[s]>*, you must find (him/her) not guilty of (that crime/those crimes)."  (Judicial Council of California Criminal Jury Instructions (2025) CALCRIM No. 3406.)

12

performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  [Citation.]  Regarding deficient performance, "'Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.'" [Citation.]  When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was ""'no conceivable tactical purpose'" for counsel's act or omission."'"  (*People v. Aguirre* (2025) 18 Cal.5th 629, 679 (*Aguirre*); see *People v. Windfield* (2021) 59 Cal.App.5th 496, 520.)

"To establish prejudice, a defendant claiming ineffective assistance of counsel 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (*Aguirre, supra*, 18 Cal.5th at p. 706; see *People v. Windfield, supra*, 59 Cal.App.5th at p. 520.)  "That probability must be sufficient to undermine confidence in the verdicts." (*Windfield*, at p. 520; see *People v. Kaihea* (2021) 70 Cal.App.5th 257, 268 ["'The likelihood of a different result must be substantial, not just conceivable.'"].)

13

2.	*Counsel's Failure To Request a Mistake-of-fact Instruction on the Vehicle Code Section 10851, Subdivision (a), Charge Was Not Ineffective Assistance*

The court instructed the jury on the elements of a violation of Vehicle Code section 10851:  "(1) The defendant took someone else's vehicle without the owner's consent; and (2) when the defendant took the vehicle, he intended to temporarily deprive the owner of possession or ownership of the vehicle; and (3) the vehicle was worth more than $950."  Mistake of fact "is . . . an assertion by the defendant that a particular factual error in his perception of the world led him to lack the mens rea required for the crime."  (*People v. Hendrix* (2022) 13 Cal.5th 933, 940; see *People v. Givan* (2015) 233 Cal.App.4th 335, 345 ["A 'mistake of fact' defense negates an element of a charged crime because it disproves criminal intent."].)  However, the "'defense' of mistake of fact requires, at a minimum, an actual belief 'in the existence of circumstances, which, if true, would make the act with which the person is charged an innocent act.'"  (*People v. Lawson* (2013) 215 Cal.App.4th 108, 115; accord, *People v. Zinda* (2015) 233 Cal.App.4th 871, 880; see *People v. Watt* (2014) 229 Cal.App.4th 1215, 1218 ["A mistake of fact must be in good faith."].)  "The trial court does not have a sua sponte duty to give a mistake of fact instruction."  (*People v. Speck* (2022) 74 Cal.App.5th 784, 791.)

Arias has not shown his counsel had "no conceivable tactical purpose" (*Aguirre, supra,* 18 Cal.5th at p. 679, internal quotation marks omitted) for not requesting a mistake-of-fact instruction.  Counsel could have rationally concluded that substantial evidence did not support such an instruction (see

14

*People v. Nguyen* (2015) 61 Cal.4th 1015, 1049 ["" "[a] trial court need give a requested instruction concerning a defense *only if there is substantial evidence to support the defense*" ""]; see also *People v. Speck, supra*, 74 Cal.App.5th at p. 791 ["where a defendant presents substantial evidence on mistake of fact and the instruction is legally correct," the court is "required to give such an instruction on request"]) and that therefore a request would have been futile. (See *People v. Wilson* (2025) 111 Cal.App.5th 1020, 1034 ["'Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile.'"]; *People v. Smith* (2021) 70 Cal.App.5th 298, 313, fn. 24 [because substantial evidence did not support giving an instruction on involuntary manslaughter, counsel was not ineffective for failing to request one].)

Caceres's testimony did not support a reasonable inference Arias actually believed Caceres consented to him driving off with her car. To be sure, Caceres testified Arias regularly drove her car. But she also admitted (after the jury saw the security footage of the parking lot, the videos of her interviews with the officers, and photographs of her injuries) that Arias hit her twice in the face and threw her to the ground and that she asked a stranger to call 911. This evidence supported the reasonable inference that Arias knew he did not have Caceres's permission to drive off with her car, not that he actually but mistakenly believed she gave him consent to take her car.

Arias also cannot show prejudice. The evidence Arias assaulted and threatened Caceres, as she first described the incident to the police officers, was overwhelming. Officer McHenry described Caceres's initial description of the attack, and the surveillance video and the video recording of Caceres's

15

interview corroborated his testimony. Arias has not shown it is reasonably probable that, had his trial counsel requested an instruction on mistake of fact (and assuming the court gave the instruction), the jury would have found he mistakenly believed, after the violent assault inside and outside the car, Caceres permitted him to drive her car away. (See *People v. Garcia* (2022) 76 Cal.App.5th 887, 900 [where "the evidence of [the] defendant's guilt was overwhelming," the defendant failed to show "it is reasonably probable she could have obtained a more favorable determination in the absence of counsel's alleged failings"]; *People v. King* (2010) 183 Cal.App.4th 1281, 1311 [counsel's failure to request pinpoint instructions did not prejudice the defendant because the evidence against him was overwhelming].)

Arias argues that, given Caceres's "prior permission, the fact that she left the car and indicated to [Arias] that she did not want to get back into the car is substantial evidence that [he] had a good faith belief that he still had [her] consent to drive off with the car" and that, "had the jury been properly instructed on mistake of fact, at least one juror may not have voted to convict [him]." It is unclear how Caceres's unwillingness to get back in the car with Arias (who was armed and had just beaten her up) indicates Arias believed Caceres consented to him taking her car at that point. Caceres's refusal to get back into the car reflected, if anything, her fear of being anywhere near Arias, and she told him as much.

16

3.      *Counsel's Failure To Request a Mistake-of-fact Instruction on the Robbery Charge Was Not Ineffective Assistance*

The court instructed the jury on the elements of robbery: "1. The defendant took property that was not his own; 2. The property was in the possession of another person; 3. The property was taken from the other person or her immediate presence; 4. The property was taken against the person's will; 5. The defendant used force or fear to take the property or to prevent the person from resisting; and 6. When the defendant used force, he intended to deprive the owner of the property permanently or to remove the property from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property."  As discussed, an actual but mistaken belief "'in the existence of circumstances'" may negate the mental state element of a crime.  (*People v. Lawson*, *supra*, 215 Cal.App.4th at p. 115; see *id.* at p. 118 ["an instruction on the defense of mistake of fact would have served . . . to negate the mental state element of the crime of theft by larceny"].)

Whether there was substantial evidence to support a mistake-of-fact instruction on the robbery charge is a close call. Citing the evidence that Caceres "had the phone in her possession" and that "the dispute had arisen because she believed that his phone contained evidence of infidelity," Arias argues "there was substantial evidence that [he] could have mistaken Caceres's phone for his own,"  While that evidence may have suggested Arias mistakenly believed he was taking back his phone, it is unclear whether the evidence suggested he had "an actual belief" (*People v. Lawson*, *supra*, 215 Cal.App.4th at

17

p. 115) the phone was his. There was no evidence, for example, the two phones looked alike. Indeed, Caceres testified her phone had a cover and Arias's phone was black, and the two phones had different operating systems. (Cf. *People v. Speck*, *supra*, 74 Cal.App.5th at p. 791 [where the defendant testified he believed the person from whom he borrowed the car was the rightful owner, substantial evidence supported a mistake-of-fact instruction]; *People v. Russell* (2006) 144 Cal.App.4th 1415, 1430 [defendant's testimony "he thought the motorcycle was abandoned," along with corroborating evidence, supported a mistake-of-fact instruction], disapproved on another ground in *People v. Covarrubias* (2016) 1 Cal.5th 838, 874, fn. 14.)

In any event, even if substantial evidence supported the instruction, and even if Arias's trial counsel had no tactical reason for not requesting the instruction (see *Aguirre*, *supra*, 18 Cal.5th at p. 679), Arias cannot show the failure to request a mistake-of-fact instruction prejudiced him because the evidence Arias knowingly took Caceres's phone was overwhelming. Caceres told the officers several times during interview Arias took her phone; Arias demanded that Caceres give him her phone before he took it from her; Caceres asked a stranger to call 911 and used an officer's phone to call her mother. There is no reasonable probability that, had counsel requested an instruction on mistake of fact (and had the court given such an instruction), the jury would have found Arias mistakenly believed he was taking his phone from Caceres. (See *id.* at p. 706.)

4. *Counsel's Failure To Request an Instruction on Claim of Right on the Robbery Charge Was Not Ineffective Assistance*

"'The claim-of-right defense provides that a defendant's good faith belief, even if mistakenly held, that he has a right or claim to property he takes from another negates the felonious intent necessary for conviction of theft or robbery."[5] (*People v. Covarrubias, supra*, 1 Cal.5th at p. 872; accord, *People v. Tufunga* (1999) 21 Cal.4th 935, 938; see *People v. Williams* (2009) 176 Cal.App.4th 1521, 1528 ["The claim-of-right defense is based on the sound concept that a person who acts under a good faith belief that he is repossessing his own property lacks felonious intent to deprive another of his or her property."].) A "claim of right may be based on a mistake of fact regarding the defendant's right to take property, as long as the belief is held in good faith. Thus, the defenses can overlap." (*People v. Russell, supra*, 144 Cal.App.4th at p. 1429.) The trial court does not have a sua sponte duty to instruct on the defense of claim of right. (*Covarrubias*, at p. 874 & fn. 14.)

Here, even if counsel should have requested an instruction on the claim-of-right defense, Arias cannot show any such failure

_____

[5] Arias does not specify the instruction or language the court should have given on the defense of claim of right. CALCRIM No. 1863, titled "Defense to Theft or Robbery: Claim of Right (Pen. Code, § 511)," states: "If the defendant obtained property under a claim of right, (he/she) did not have the intent required for the crime of (theft/ [or] robbery). [¶] The defendant obtained property under a claim of right if (he/she) believed in good faith that (he/she) had a right to the specific property or a specific amount of money, and (he/she) openly took it. [¶] In deciding

prejudiced him. (See *Aguirre, supra*, 18 Cal.5th at p. 706.) As discussed, the evidence that the phone belonged to Caceres and that Arias knew the phone was Caceres's was overwhelming. In addition to Caceres's statements to the police that Arias took her phone, Arias's comments during his assault of Caceres (as she described it to the officers) confirmed Arias knew he was taking Caceres's phone. He told Caceres that her phone was on the seat of the car before she picked it up and got out of the car and, as he threw Caceres on the ground, he said, "Give me your fucking phone." Thus, even if counsel should have asked for a claim-of-right instruction, it was not reasonably probable the jury would have found Arias took his phone or took Caceres's phone under a good faith belief he had a right do so.

C.     *The Court Did Not Abuse Its Discretion in Declining To Strike Arias's Prior Serious or Violent Felony Conviction*

Arias argues the trial court abused its discretion in denying his motion under *Romero, supra*, 13 Cal.4th 497 to strike his prior serious or violent felony conviction because, according to Arias, he was a "'youthful offender'" when he committed the prior

---

whether the defendant believed that (he/she) had a right to the property and whether (he/she) held that belief in good faith, consider all the facts known to (him/her) at the time (he/she) obtained the property, along with all the other evidence in the case. The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. But if the defendant was aware of facts that made that belief completely unreasonable, you may conclude that the belief was not held in good faith." (Judicial Council of California Criminal Jury Instructions (2025) CALCRIM No. 1863.)

felony and the court "did not appear to take into consideration [his] age at the time he committed the strike prior." The court did not abuse its discretion.

1. *Relevant Proceedings*

The People alleged Arias was subject to sentencing under the three strikes law because he was convicted in 2007 of kidnapping (§ 207), a serious and violent felony. Before trial commenced in this case, Arias's original counsel filed a motion under *Romero*, *supra*, 13 Cal.4th 497 to strike the prior conviction. Arias's original counsel stated that Arias committed his prior felony when he was 25 years old and that "a long prison sentence enhanced by mistakes of his youth are not what the [three strikes] law was created for or to enhance." At some point after the jury convicted Arias, the court appointed new counsel for Arias. Arias's new attorney filed another motion under *Romero*, listing four circumstances in mitigation: Arias's prior conviction occurred in 2007, the injuries in this case "were minimal," Arias had dropped out of gang life, and Caceres wanted the court to release Arias "immediately." The second *Romero* motion (unlike the first) did not discuss Arias's youth at the time he committed his prior serious or violent felony.

As discussed, at the sentencing hearing the court found that Arias had a prior serious or violent felony conviction within the meaning of the three strikes law and found true (after Arias's admission) aggravating circumstances under California Rules of Court, rule 4.421(b)(3) and (b)(4). The prosecutor pointed out the "brutality" of Arias's crime in this case, his "lack of remorse," and that Arias had served 14 years in prison on a kidnapping conviction. The prosecutor asked the court to impose an

21

aggregate prison term of 14 years eight months.  Members of Arias's family testified and asked the court for leniency in sentencing him.  Counsel for Arias asked the court to sentence Arias to a prison term of six years, which apparently was the People's pretrial offer.

The court found Arias's conduct "was really, really serious, especially in light of the fact that it occurred almost immediately after he was released from prison, after being there for quite some time."  The court did not discuss Arias's age at the time he committed his prior felony.  The court expressed its "extreme concern" over Arias's "fundamental disregard for the respect of other people in this case."  After stating that it had considered the statements in mitigation, the court sentenced Arias to a prison term of 10 years eight months.  In particular, on Arias's robbery conviction, the court imposed the middle term of three years, doubled under the three strikes law; on his conviction for violating section 273.5, subdivision (a), the court imposed a term of one year (one-third the middle term of three years), doubled; on his conviction for violating Vehicle Code section 10851, subdivision (a), eight months (one-third the middle term of two years), doubled; and on the conviction for violating 29800, subdivision (a)(1), eight months (one-third the middle term of two years), doubled.  The trial court imposed and stayed execution of the sentences on the remaining counts under section 654.

2.      *Applicable Law and Standard of Review*

Under *Romero*, *supra*, 13 Cal.4th 497 "a trial court may dismiss a strike allegation or finding in the interests of justice." (*People v. Shaw* (2025) 18 Cal.5th 1089, 1097.)  "'[I]n ruling

22

whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to . . . [section 1385, subdivision (a),] or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."' (*People v. Dain* (2025) 18 Cal.5th 246, 256-257; see *People v. Salazar* (2023) 15 Cal.5th 416, 428; *People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) "Thus, the Three Strikes law establishes a 'strong presumption' in favor of a harsher sentence and requires the court to explicitly articulate its reasoning if it is to depart from a harsher sentence by granting the *Romero* motion." (*Salazar*, at p. 428; see *Carmony*, at p. 378.) "While a court must explain its reasons for striking a prior [citations], no similar requirement applies when a court declines to strike a prior [citation]. 'The absence of such a requirement merely reflects the legislative presumption that a court acts properly whenever it sentences a defendant in accordance with the three strikes law."' (*In re Large* (2007) 41 Cal.4th 538, 550; accord, *In re Coley* (2012) 55 Cal.4th 524, 560; *People v. Brugman* (2021) 62 Cal.App.5th 608, 637.)

A court's "failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*Carmony*, *supra*, 33 Cal.4th at p. 374; accord, *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1093; *People v. Mendoza* (2022) 74 Cal.App.5th 843, 856.) A court "will only

abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances," such as "where the trial court was not 'aware of its discretion' to dismiss [citation]," or "where the court considered impermissible factors in declining to dismiss." (*Carmony*, at p. 378; accord, *People v. Nunez* (2023) 97 Cal.App.5th 362, 371.) "Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'" (*Carmony*, at p. 378; accord, *People v. Brugman*, *supra*, 62 Cal.App.5th at p. 637.)

### 3. *The Trial Court Did Not Abuse Its Discretion*

The defendant's age when he or she committed the prior serious or violent felony "is plainly relevant to the nature and circumstances of the strikes and could be a mitigating factor." (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1142.) The trial record contained ample information about Arias's age at the time he committed his prior felony. The information included Arias's date of birth (December 2, 1981) and the date of the alleged prior conviction (January 25, 2007), and in the *Romero* motion counsel for Arias pointed out the date of Arias's prior felony conviction. The evidence at trial included Caceres's statement (in 2022) Arias would turn 41 years old later that year. From this information and evidence the court could readily calculate Arias's age at the time he committed the kidnapping, for which he served 14 years in prison. The *Romero* motion Arias's original trial attorney filed asked the court to strike Arias's prior felony conviction in light of his relative youth when he committed that

24

felony.  We presume the court considered Arias's youth (along with other relevant factors) in deciding not to exercise its discretion to strike Arias's prior felony conviction.  (See *Carmony*, *supra*, 33 Cal.4th at p. 378; *People v. Brugman*, *supra*, 62 Cal.App.5th at p. 637.)

Contrary to Arias's assertion, the trial court's failure to discuss Arias's age at the time he committed his prior serious or violent felony does not mean the court did not consider it.  As the Supreme Court stated, "'"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."'"  (*Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)  Arias's reliance on the trial court's silence (or on the court's discussion of other factors) does not meet his burden to prove error on appeal.  (See *People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["the fact that the court focused its explanatory comments on the violence and potential violence of appellant's crimes does not mean that it considered only that factor"]; see also *People v. Allen* (2019) 41 Cal.App.5th 312, 330 [same].)

Citing *People v. Crandell* (1988) 46 Cal.3d 833, at page 862, Arias argues that, despite the presumption the court "correctly applied the law on a silent record," "there still must be evidence that the 'court engaged in a reasoned exercise of judgment based on an examination of the particular circumstances of [the] case.'"  Arias's reliance on *Crandell* is misplaced.  The statement Arias quotes from the *Crandell* opinion has to do with the defendant's request for appointment of advisory counsel.  (*Ibid*.)  Arias does

25

not explain how that discussion relates to the trial court's exercise of discretion under section 1385, subdivision (a), or *Romero*.

Citing *People v. Pittman* (2023) 96 Cal.App.5th 400, at page 417, Arias argues we "should not assume that the trial court implicitly considered a defendant's youth when 'the court did not mention the subject in its otherwise comprehensive ruling.'" In *Pittman* the defendant appealed from an order denying his petition for resentencing under section 1172.6. (*Pittman*, at p. 403.) The court observed that "a defendant's youth . . . is a factor within the totality of circumstances relevant to the requisite mental state for felony murder" and concluded that, because the trial court did not discuss the defendant's youth at the time he committed second degree murder, the court in *Pittman* could not "assume the trial court implicitly considered" that factor. (*Id.* at p. 417.) The court directed the superior court "to consider how, if at all, [the defendant's] youth impacted his ability to form the requisite mental state for second degree murder." (*Id.* at p. 418.) The task of the superior court under section 1172.6, subdivision (d)(3), however, is to determine if the People have proved beyond a reasonable doubt the defendant "'is guilty of murder . . . under California law as amended by [the Legislature's] changes to Section 188 or 189.'" (*Pittman*, at p. 413; see § 1172.6, subd. (d)(3)). That inquiry is very different from the trial court's exercise of discretion under section 1385, subdivision (a), whether to dismiss a defendant's prior serious or violent felony "in furtherance of justice."

26

## DISPOSITION

The judgment is affirmed.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.